OPINION OF THE COURT
John A. K. Bradley, J.
The defendants are moving to dismiss the indictment and *753 for other relief. Since each of the defendants joins in the other’s motions, it is appropriate to consider the motions jointly. The defendants are charged in 41 counts with the crimes of enterprise corruption, bribing a labor official, bribe receiving by a labor official, and various Labor Law violations. This indictment resulted from a massive investigation of Local 135 of the United Brotherhood of Carpenters and Joiners of America (the Carpenter’s Union) and the drywall industry.
The defendants are moving for inspection of the Grand Jury minutes and dismissal of the indictment. They are also moving, specifically for dismissal of count one (the enterprise corruption count) on various grounds, for severance, for suppression of eavesdropping evidence and for other relief.
This case arose from an investigation of the Carpenter’s Union. Much of the evidence was secured by use of an official of that union, one Melvin Eckhaus, who was caught taking a bribe and then agreed to cooperate with the District Attorney’s office. The People contend that the defendant Louis Moscatiello, an official of Local 530 of the Operative Plasterers and Cement Masons International Association, the defendant Benedetto "Benny” Schepis, an official of Local 17 of the Carpenter’s Union, and Eckhaus were a group of persons who engaged in a "criminal enterprise”. The People assert that Moscatiello would arrange or transmit bribes from contractors to Eckhaus to influence Eckhaus in his capacity as a union official. Schepis is accused of assisting Moscatiello in this activity.
Count one charges the crime of enterprise corruption in violation of article 460 of the Penal Law. Article 460, part of the New York Organized Crime Control Act (OCCA), was inspired by the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). (18 USC § 1961 et seq.; cf, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 460, at 552.) However, the experience of the Federal courts with RICO was examined closely by the Legislature. OCCA was designed to target certain criminal activities more precisely defined and with less sweep than RICO.
When RICO was enacted, it was widely viewed as a potent weapon against organized crime. But it has been used not just against "organized crime” in the traditional sense but also against many other activities since RICO as enacted permitted a very broad view of its scope. The key section of RICO, 18 USC § 1962 (c), makes it unlawful "for any person employed *754 by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity”. The courts have held that the pattern requirement requires the existence of at least two criminal predicate acts, and the Supreme Court of the United States has held that the "pattern” requirement requires not only two such acts, but also a certain continuity and relationship among such acts (see, H.J. Inc. v Northwestern Bell, 492 US 229). Yet other than this verbiage there has been little or no guidance as to the actual meaning of the term "pattern”.
The concept "enterprise” has proven equally elusive. (See, United States v Turkette, 452 US 576; United States v Bledsoe, 674 F2d 647, cert denied sub nom. Phillips v United States, 459 US 1040; United States v Stolfi, 889 F2d 378; United States v Indelicato, 865 F2d 1370.) Criticism of RICO stems not only from its vague language but also from the application of the statute to situations not usually associated with organized crime. This is so because whatever the definition of "enterprise”, it is not required that the enterprise be a criminal one. Indeed the statute is designed to attack the corruption of a legitimate enterprise by a pattern of racketeering activity. The result is that RICO is now widely used in cases where there is more than one defendant and the necessary predicate acts.
The New York Organized Crime Control Act’s enterprise corruption sections were designed to avoid such a proliferation of prosecutions. Thus, the legislative findings accompanying the statute point out that the statute contains more rigorous definitions than other similar statutes, which limit the statute’s applicability. Chief among these definitional restrictions is New York’s requirement that a perpetrator act with intent to participate in or advance the affairs of a criminal enterprise. The statute defines " '[cjriminal enterprise’ ” as a "group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents” (Penal Law § 460.10 [3]). A person is guilty of enterprise corruption
"when, having knowledge of the existence of a criminal enterprise and the nature of its activities, and being employed by or associated with such enterprise, he:
*755 "(a) intentionally conducts or participates in the affairs of an enterprise by participating in a pattern of criminal activity” (Penal Law § 460.20 [1]).
The result of this statutory scheme is that there must be a criminal enterprise with a structure and purpose as set forth in the statute, and the defendant must know of its existence and the nature of its activities. That the Legislature intended for the "criminal enterprise” requirement to limit the applicability of the statute is clear from a letter by one of the authors of the bill, Assembly Member Melvin H. Miller, then Chairman of the Committee on Codes to Evan A. Davis, Counsel to the Governor. It is clear from the letter that Mr. Miller sought to clarify the intent of the Legislature while urging the Governor’s approval of the bill. Mr. Miller wrote:
"The most fundamental difference between the measure approved by the Assembly and all prior versions is the requirement of each defendant’s association with a criminal enterprise. Other proposals would have permitted, as does federal law, prosecution of individuals who engage in a pattern of criminal activity without further proof that the criminal activity was accomplished for the purpose of participating in or advancing the affairs of a criminal enterprise with a separate, distinct and ascertainable structure and a continuity of existence and purpose beyond the scope of the pattern itself.
"The members of the Codes Committee felt that the extraordinary sanctions allowed under the Act should be reserved for those who not only commit crimes but do so as part of an organized criminal enterprise. Present law is adequate to punish ordinary white-collar crime * * *. For that reason, it was not the sponsor’s intent to redefine or sanction a new conduct already punishable under current law. Similarly, mere corruption of a legitimate enterprise by a pattern of criminal activity is insufficient to justify prosecution under this Act.”
There is no question that the allegations against the defendants in this regard would satisfy the Federal RICO standard. The People have sought to demonstrate that the roles played by Moscatiello, Eckhaus and Schepis, in committing the crimes charged, demonstrate the existence of a criminal enterprise. However, having reviewed the Grand Jury minutes this court cannot conclude that these persons were "associated in an ascertainable structure distinct from a pattern of criminal *756 activity, and with a [scope] of existence, structure and criminal purpose beyond the scope of individual criminal incidents” (Penal Law § 460.10 [3]). The evidence as presented to the Grand Jury shows three individuals engaged in giving or taking bribes and related activities. Beyond the various criminal acts these three people were associated in no structure and certainly not one with a scope of existence beyond their criminal acts. The People have sought, with some imagination and ingenuity, to show the existence of an organization by showing that Moscatiello was the "director” of the enterprise, Schepis, his "assistant” and Eckhaus the "instrument” of the criminal activity. However, this shows little more than that the three people played different roles. Indeed, they had to play different roles, for the purpose of this activity was to bribe Eckhaus to allow violations of the union rules. That three people who commit crimes together assign themselves separate roles does not result in a structure "distinct from [their] pattern of criminal activity” (Penal Law § 460.10 [3]).
Failure of the evidence to show a criminal enterprise within the meaning of Penal Law article 460 compels dismissal of the first count.
Count one is dismissed.
[Portions of opinion omitted for purposes of publication.]